38 C.C.P.A. (Patents)
## GROAT v. SHUTTLEWORTH.

### Patent Appeals No. 5791.

United States Court of Customs
and Patent Appeals.

June 5, 1951.

Ralph Burch, Washington, D. C., for appellant.

Pennie, Edmonds, Morton & Barrows, New York City (Leslie B. Young, New York City, and Clarence M. Fisher, Washington, D. C., of counsel), for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JACKSON, Judge.

This is an appeal in an interference proceeding from a decision of the Board of Interference Examiners awarding to appellee priority of invention of the subject matter embraced within a single count which reads as follows: "A method of making a pile fabric having a backing and a plurality of pile warps which comprises forming the backing with the pile warps held therein by elements of the backing, raising the pile warps selectively from the backing in accordance with a pattern and restoring them to the backing to form transverse rows of portions of the pile warps projecting above the backing to form pile having portions thereof in alternate [sic] rows projecting from the backing to a height higher than the pile warps in other rows, cutting said portions in said alternate rows along the backing to form tufts, while leaving the portions in the intermediate rows uncut to form loops, increasing the height of the loops in each row thereof to a height less than the height of the tufts and then reducing the height of only the loops of those pile warps of which portions are raised in the next succeeding intermediate row."

The interference involves an application of appellant, serial No. 752,217, filed June 3, 1947, and assigned to the Magee Carpet Company, and an application of appellee, serial No. 728,867, filed February 15, 1947, and assigned to Mohawk Carpet Mills, Inc.

The interference, when first declared, contained two counts both of which were suggested by the Primary Examiner. During the interlocutory period appellant moved to dissolve the interference on the ground that the counts were unpatentable over either a prior patent to appellee, No. 2,164,090, dated June 27, 1939, which issued on an application, serial No. 257,904, dated February 23, 1939, alone, or over that patent in view of other prior art.

The motion to dissolve was granted by the Primary Examiner as to one of the counts but denied as to the count involved herein.

In the preliminary statement of appellant it is alleged that the invention was first disclosed to others on April 24, 1939; first drawings were made on June 10, 1940; reduction of the invention to practice as of September 1940; the exercise of reasonable diligence from July 1939; and the first written description of the invention made as of June 1946.

The appellee alleges in his preliminary statement that the invention was first disclosed to others and the exercise of due diligence was begun on or about October 15, 1940; first drawings on December 2, 1946; first written description January 2-6, 1947; and reduction of the invention to practice on October 30, 1940.

Both parties took testimony, filed briefs, and were represented at the final hearing before the board.

The board held the record established that appellant was the first to conceive the process defined by the count in 1940, and it is admitted by appellee that appellant actually reduced the invention to practice in 1946.

In view of the strict standard established for corroboration of evidence from which reduction to practice is determined, the board stated that it was inclined to the holding that neither appellant nor appellee

established such actual reduction prior to their respective filing dates. In that event, of course, appellee would be awarded priority of invention for the reason that he is the senior party having been the first to file his application. The board then remarked that if the method of production could be properly deduced from the fabric product and appellant awarded actual reduction to practice of his fabric made by the involved method in 1946, by the same principle appellee is entitled to an actual reduction of the invention to practice prior to 1946, namely, in 1941, and, therefore, in that event he must be awarded priority of reducing the invention to practice.

In view of those holdings the board examined the record with respect to the diligence of appellant during the critical period beginning just prior to appellee's entry into the field in 1940 up to appellant's actual reduction to practice in 1946, or his constructive reduction to practice in 1947. After having discussed the record with respect to the exercise of proper diligence, the board held that such diligence had not been established during the critical period and appellant, being the second to reduce to practice, could not prevail in this proceeding.

As may be observed from a reading of the count, the involved invention relates to a method of making loop and tuft piled fabrics for use as carpets or rugs, the yarn pile thereof having portions raised out of the backing of the article over pile wires, pursuant to a pattern to form pile elements. It is stated that in a fabric made by the involved method the pile elements are in transverse rows and those in alternate rows are loops of two different heights and the elements in the intermediate rows are made into tufts which are higher than the high loops. The involved method may be practiced with a Wilton loom by the use of a combination of pile wires and an appropriate set of Jacquard pattern cards. While it is stated in the brief of counsel for appellant that the fabric itself is old and well known in the art, it appears in a memorandum made by appellant, which is an exhibit here, that

the product made by the process was considered by him to be a new fabric.

In the month of April 1939, appellant made a design drawing for Jacquard cards which were cut in July of that year in accordance with the design. That drawing is an exhibit, as is also another drawing which bears the caption "Suggestion for Special Weave." Appellant's corroborating witness testified that he thought he saw the second mentioned exhibit sometime in 1940. Appellant, at the time of taking testimony, was employed by the Magee Carpet Company as a stylist. He had many years experience in the art of carpet designing and was familiar with many of the looms upon which carpets are made. The witness for appellant, at the time of taking testimony, was a superintendent of the "Wilton Department" of the same company. Unquestionably, he was highly skilled in the art of Wilton carpet making. He stated that he understood that a cutting wire and a "knob" wire were to be used in weaving the article made in accordance with the drawings. It was upon the testimony of appellant and his corroborating witness that the board held conception of the invention by appellant of the process defined in the count to have occurred in 1940.

With respect to the first drawing, the corroborating witness stated that it had given him some trouble. In his own words he stated that he "had quite a few headaches with it." A "knob" wire has on one end a protruberance. When such wires are withdrawn from the loop pile, the pile is raised by the knob. The cutting wire is a similar wire which instead of having a knob on the end thereof has a blade in order to cut the loops to form tufts.

Prior to the application of the method defined by the count it appears that the corroborating witness had not used similar wires in the manufacture of carpets in his place of employment and while he stated that he could not answer a question as to whether or not he had any trouble with the knob wires breaking the loops on withdrawal for the reason that that first use was a long time in the past, he stated that "I would say we did." He further stated

that he had the same trouble subsequent to that date.

In accordance with the exhibit drawings, a piece of carpet about one square foot was woven but not finished. It appears from examination to possess loops of three different heights and appellant, in his testimony, stated that if there were three different heights in that exhibit it was due to imperfections which arose from the fact that it was the first attempt to make such a carpet and appellant was not familiar with the difficulties that might be met in so doing. Appellant testified that the exhibit would be suitable for commercial use if the faults in the carpet were corrected. It also appears that in that exhibit there are holes or blank spots in the pile. That condition was stated by appellant's corroborating witness to have been caused by a miscutting of the card. He also testified that a carpet having such gaps in a pile could not be sold commercially.

Appellant testified that the aforesaid piece of carpet had never been finished and had not been subjected to any tests.

It appears that when appellant outlines a style or design plan for a carpet he talks it over with the aforesaid superintendent who in turn works out the ideas of appellant on the looms. No records are made of the styles. When the article is taken from the loom, if appellant is satisfied with it he takes it with him to New York and if it is adopted in the New York office it is then manufactured.

It does not appear that the unfinished piece of carpet heretofore referred to was carried to New York and manufacture begun at that time. Nothing was done with the method employed in making the foot square carpet until about the middle of 1946 when a piece of carpet was made in accordance with the method defined by the count and which is admitted by counsel for appellee to be a reduction to practice.

In explanation of the lapse of six years ending in 1946, it was stated on behalf of appellant that "The war came on while we were working with this." The tag attached to the foot square piece of carpet bears the date of September 4, 1940. World War II started on December 7, 1941. Therefore, more than 15 months elapsed between the weaving of the foot square carpet and the start of the war. All during the war period appellant's assignee continued to produce carpets and was never entirely out of pile fabric production.

It is clear to us that at any time between 1940 and 1946 appellant could easily have made another sample of the carpeting and have learned how to use the wires employed in the method without "having headaches" or tearing the loops. We can perceive no reason why appellant could not have gone ahead with the filing of a patent application, particularly in view of the fact that he stated in his testimony that on "every particular fabric we make we consider applying for a patent." In our opinion, his failure to do anything at all with the method or to file an application during the six year interval indicates that appellant was not satisfied and had laid the work aside as an abandoned experiment. We do not see how any other construction can be placed upon the evidence before us.

We agree with the statement of the board that, under the established standards with respect to corroborating evidence, it could well be held that the parties should be restricted to their respective filing dates. In our opinion the board could have definitely made such holding. We further agree that if appellant can be considered to have reduced the invention to practice in the middle of 1946, appellee, by the same standards, would be entitled to his actual reduction to practice prior to that date. In either event, priority of invention of the subject matter would be awarded to appellee.

We do not deem it necessary to discuss any other issues herein in view of what has already been stated. The decision of the Board of Interference Examiners is affirmed.

Affirmed.